Daniel Schout, Jr., Appellant, *v.* The Conkey Avenue Saving, Aid and Loan Association, Respondent.

*Loan association — withdrawal of money from the association by a member and director — when he is estopped by his neglect of duty as director from doing so to the injury of innocent stockholders.*

Where one voluntarily takes the position of trustee or director of a corporation, good faith, exact justice and public policy unite in requiring of him such a degree of prudence as men prompted by self-interest generally exercise in their own affairs, and it is a gross breach of duty not to bestow them.

An absent director may be held equally responsible with his associates in the case of extreme neglect of duty in omitting to attend the board meetings, or where the wrongful acts of his associates have come to his knowledge and he acquiesces and takes no steps to avert their injurious consequences when by due diligence he might have prevented the commission of the wrongful acts.

In an action brought by a member who was also a director of a loan association, it appeared that he had filed a written notice withdrawing his moneyed interest in the association in pursuance of the articles of association, and that he based his right to recover upon the ground that the money which was in the treasury when his withdrawal notice was filed, instead of being applied upon his claim, was loaned to the members of the association contrary to the rules thereof.

It appeared that the plaintiff approved of one of the loans, which was made contrary to the rules of the association; that he attended the meetings of the board from time to time during the period when the other irregular loans were being made; that as a director he had access to the books of the association at all times, and that he knew, or ought to have known, that his associates were making loans which were unauthorized.

*Held,* that if the plaintiff had attended properly to his duties as a director he would have known the nature and extent of the business that was being transacted by the board and that unauthorized loans were being made;

That it would be unjust to permit him to take advantage of his own negligence to the injury of innocent stockholders who had filed their applications of withdrawal, and that he was estopped from maintaining the action.

APPEAL by the plaintiff, Daniel Schout, Jr., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 26th day of February, 1895, upon the decision of the court, rendered after a trial before the court without a jury at the Monroe Circuit, dismissing the plaintiff's complaint.

*Herbert J. Stull,* for the appellant.

*H. Nelson Peck* and *Edwin McKnight,* for the respondent.

Present — LEWIS, BRADLEY, WARNER and WARD, JJ.

Judgment affirmed on opinion of DAVY, J., at Circuit.

The opinion of DAVY, J., was as follows:

DAVY, J.:

This action is brought to recover $1,210.35, it being the amount credited to the plaintiff upon the books of the defendant for principal and dividends. It appears from the evidence that the plaintiff, who was a member of the defendant loan association, on the 16th day of December, 1891, filed a written notice withdrawing his moneyed interest in the association. Article 14, section 2 of the articles of association provide that members, not having received a loan, may withdraw one or more of their shares from the association at any time by giving notice in writing to the board, and the liability to pay further dues and the right to dividends shall cease with the filing of said notice. Applications for withdrawals shall only be received in the regular order of business, and the principal theretofore paid on such share or shares shall be refunded to such members as soon as the necessary funds are in the treasury.

The plaintiff bases his right to recover in this action upon the ground that the money which was in the treasury when his withdrawal notice was filed, instead of being applied upon his claim, was loaned to its members contrary to the rules of the association. There can be no question but that the officers and members of the defendant were bound to observe the rules prescribed in its constitution and by-laws, which were printed in a book issued to every

FIFTH DEPARTMENT, JUNE TERM, 1895. [Vol. 87.

shareholder, who was presumed to know what they were. The powers and duties therein expressed and imposed were binding upon the association and its members. The defendant, therefore, had no legal right to disregard them by appropriating any of the money in its treasury to the making of loans while the plaintiff's withdrawal notice was on file until his claim had been paid in full.

In the case of *Wolfe* v. *The Conkey Avenue Saving, Aid & Loan Association* (75 Hun, 203), which was an action against this same defendant, DWIGHT, P. J., says: The defendant had no right, "under its articles of association, to appropriate any of its funds to the making of loans while withdrawal notices were on file which had not been honored." The plaintiff, therefore, under the decision of the court in the case last cited, was entitled to the payment of his claim when reached, and if the directors disregarded the rules of the association and loaned money to its members which should have been applied in payment of its indebtedness to the plaintiff, the defendant is liable in this action, unless the plaintiff has waived his right to the fund, or has done some act which, under the rules of equity, estops him from maintaining this action.

It appears from the evidence that at the time the loans were made, the plaintiff was one of the directors of the defendant and approved of the Ross loan, which he now concedes was made contrary to the rules of the association. He attended the meetings of the board from time to time, during the period that the other irregular loans were being made. As a director he had access to the books of the association at all times, and he knew or ought to have known that his associates were making the loans which he now contends were unauthorized. While directors, as a general rule, are not liable for errors of judgment, unless they are grossly wrong, yet, by accepting the trust, they are obliged to faithfully execute it. The plaintiff, therefore, by accepting the office of director, was required to execute it with fidelity and reasonable diligence. It was his duty to attend the meetings of the board with reasonable regularity and to exercise ordinary diligence in ascertaining the financial condition of the association. He knew that the Ross loan, which received his approval, was irregular. That fact was sufficient to have put any prudent man, who was acting as a director, on his guard, and upon inquiry as to whether other loans of that character were being made.

If he grossly neglected his duties he cannot claim protection on that ground, but must be held, in the eyes of the law, just as responsible for the irregular loans as the other directors. The learned counsel for the plaintiff seek to avoid the force of an equitable estoppel by claiming that the plaintiff was ignorant of these loans with the exception of the Ross loan. The evidence in the case does not warrant me in reaching such a conclusion. It appears that he attended at least fifteen meetings while he was a director, and one of the officers testified that he attended the meetings of the board regularly. It will not do to permit him to plead ignorance on the ground of neglect of duty. The rule is, that an absent director may be held equally responsible with his associates in the case of extreme neglect of duty in omitting to attend the board meetings, or where the wrongful acts of his associates have come to his knowledge and he acquiesces and takes no steps to avert their injurious consequences, when by due diligence he might have prevented the wrongful acts from being done. (*Knowlton* v. *Congress & Empire Spring Co.*, 57 N. Y. 518–537; *Knox et al.* v. *Baldwin*, 80 id. 612; *Robinson* v. *Smith*, 3 Paige, 222; *Hyatt* v. *Clark*, 118 N. Y. 567; *Adams* v. *Mills*, 60 id. 538; *Lindner* v. *Sahler*, 51 Barb. 323; *Briggs* v. *Easterly*, 62 id. 51; *Bronson* v. *Dimock*, 4 Hun, 614.)

The law seems to be well settled that even a stockholder in a corporation who participates in an unauthorized act prejudicial to his interest and acquiesces in the transaction is estopped from afterwards complaining either in his own behalf or in the behalf of the corporation.

It was held in *Sheldon H. B. Co.* v. *Eickemeyer H. B. M. Co.* (90 N. Y. 607) that where stockholders with full knowledge ratify a transaction and affirm the settlement, the act, though beyond the power given the trustees by the charter, could not be subsequently avoided by the stockholders, or by the corporation. The learned judge who wrote the opinion of the court says: "It is not needed in such a case that there be an express assent on the part of the stockholders to work an equitable estoppel upon them. When they neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress after knowledge of the committal of it, this will be deemed an acquiescence in it." (*Kent* v. *The Quicksilver Mining Co.*, 78 N. Y. 159–187.)

The rule in regard to directors is much more strict. They are

intrusted with the management of the corporate business, and are required to exercise the same degree of diligence and care that men of ordinary prudence and skill usually exercise in the management of similar business for themselves. The business of the defendant could not be done except by its directors, who are required to exercise a general supervision over the affairs of the association. The shareholders had a right to assume that the directors would do their duty, and if they did not they had a right to hold them personally liable for a gross neglect of duty. The law on this subject is clearly stated by Judge EARL in *Hun* v. *Cary* (82 N. Y. 65). He says: " The trustees are bound to observe the limits placed upon their powers in the charter, and if they transcend such limits and cause damage they incur liability." He also says that " when one deposits money in a savings bank or takes stock in a corporation, thus divesting himself of the immediate control of his property, he expects, and has the right to expect, that the trustees or directors, who are chosen to take his place in the management and control of his property, will exercise ordinary care and prudence in the trusts committed to them ; the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs. When one voluntarily takes the position of trustee or director of a corporation, good faith, exact justice and public policy unite in requiring of him such a degree of care and prudence, and it is a gross breach of duty — *crassa negligentia* — not to bestow them."

If the plaintiff in this action had attended to his duties properly as a director, he certainly must have known the nature and extent of the business that was being transacted by the board, and that unauthorized loans were being made. It would be unjust, therefore, to permit him now to take advantage of his own negligent acts to the injury of innocent shareholders who have filed their applications of withdrawal. In *Knox et al.* v. *Baldwin (supra)* Judge DANFORTH says a director cannot be permitted, either alone or with his associates, to " pursue a remedy which, if enforced, would enable him to profit by his own wrong or negligence." The plaintiff, therefore, is estopped from maintaining this action, and must wait until the defendant collects a sufficient sum to pay his claim, as provided by its constitution and by-laws.

The complaint, therefore, is dismissed, with costs.